| PROOF OF SERVICE | SUMMONS |
| --- | --- |
| | Case No. 22 - 10395-CZ |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ OFFICER CERTIFICATE | OR | ☒ AFFIDAVIT OF PROCESS SERVER |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☒ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with   correspondence and a jury demand
_____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| National Trappers Association | 429 H. Street, Bedford, IN 47421 | 9-9-2022 8:38A.m |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
| --- | --- | --- | --- | --- |
| $ | | $ | | Dustin Patton |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | Process Server |
| | | | | Title  Indiana |

Subscribed and sworn to before me on 9-9-2022 _____, Greene _____, County, Michigan.
                                          Date

My commission expires: Feburary 1, 2029  Signature: _____ Lacey L Porter
                        Date        Indiana                Deputy court clerk/Notary public

Notary public, State of Michigan, County of   Greene

Lacey L Porter
Notary Public, State of Indiana
Greene County
Commission Number NP0731900
My Commission Expires
Feburary 1,2029

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                    Attachments

_____ on _____
                                    Day, date, time

_____ on behalf of _____
Signature

**EXHIBIT**

1

STATE OF MICHIGAN
IN THE 49th CIRCUIT COURT FOR OSCEOLA COUNTY

VICKIE WRIGHT

     Plaintiff

-v-

NATIONAL TRAPPERS ASSOCIATION,

JOHN DANIEL, and

MATT LUMLEY

     Defendants

Case No. 22-16395-CZ

Hon. Scott Hill-Kennedy

---

Shinn Legal, PLC
Jason M. Shinn (P64453)
Attorney for Plaintiff
3080 Orchard Lake Rd., Suite C
Keego Harbor, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

---

### PLAINTIFF'S COMPLAINT

**There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.**

Plaintiff Vickie Wright, for her Complaint against National Trappers Association, John Daniel, and Matt Lumley, states as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1.    Plaintiff Ms. Wright was employed by Defendant National Trappers Association ("NTA") as its event coordinator. She reported about a severe and troubling sexual harassment incident involving Defendant NTA's Vice President Matt Lumley where he made several calls beginning around 1:00 AM to a young, female employee of NTA. Analogous to the "boys will be boys" excuse that often is trotted out to excuse these actions, these calls were shrugged off by

Defendant Lumley and his network of male colleagues as no big deal. But the same did not happen with many female employees, including Plaintiff.

2.      Plaintiff reported this incident to NTA's President John Daniel around July 24, 2021. Just days before this report, Plaintiff received a glowing employment review from NTA's executive counsel, which also matched NTA's past recognition for her excellence in 2020.

3.      Yet only weeks after receiving this glowing review and making her report about an incident she believed to involve sexual harassment of NTA's employee, Defendant NTA drafted a job-posting for Plaintiff's position, which it inadvertently provided to her. Later, Defendant NTA gave Plaintiff written notice of her termination on August 20, 2021.

4.      As fully discussed below, Plaintiff's termination was retaliation for reporting her concerns about a sexual harassment incident against NTA's employee. And NTA failed to protect Plaintiff from such unlawful discrimination in violation of Michigan statutory and public policy.

5.      Further, Defendants Lumley and Daniel defamed and disparaged Plaintiff to NTA's board/members in securing her dismissal and in explaining why Plaintiff was terminated. These false and defamatory statements were made at the end of July 2021. These statements included false statements focusing on her job performance, accusations about her promiscuity, and an improper relationship she had purportedly had with a married man during Plaintiff's employment. None of these statements are true. Instead, the timing coincides with an effort to retaliate against Plaintiff for reporting her concerns about the sexual harassment of NTA's employee.

6.      Thus, Plaintiff asserts these claims against Defendants as follows:

    **A.** Count I: Defamation (Libel) against Defendants Daniel and Lumley;

    **B.** Count II: Defamation (Slander) against Defendants Daniel and Lumley;

C.  Count III:  Tortious Interference with Contract and Business Expectancies against Defendants Daniel and Lumley;

D.  Count IV:  Common Law Invasion of Privacy (False Light Publicity) against Defendants Daniel and Lumley;

E.  Count V: Civil Conspiracy against Defendants NTA, Daniel, and Lumley.

F.  Count VI: Unlawful Retaliation in Violation of Michigan CRA, § 37.2701 by Defendants Daniel, Lumley, and NTA; and

G.  Count VII: Termination in Violation of Public Policy against Defendants NTA Lumley, and Daniel.

## THE PARTIES, JURISDICTION, AND VENUE

7.      Plaintiff Vickie Wright ("**Ms. Wright**") is an individual.  Ms. Wright lives in Osceola County, Michigan.

8.      Defendant National Trappers Association ("**NTA**") was originally founded in Michigan in 1958. And, it is, upon information and belief, now a foriegn nonprofit corporation, organized under Indiana law.

9.      Defendant NTA purposefully availed itself of privileges for conducting activities in Michigan, the cause of actions set forth in the Complaint arose from Defendant's activities in Michigan, and those activities were substantially connected with Michigan to make it reasonable to exercise jurisdiction over Defendant NTA. For example:

A.  NTA conducts business throughout Michigan, including as follows:

i.  It contracted with Plaintiff, a Michigan resident. This contract was also negotiated and signed in Michigan;

ii.  NTA has held several of its annual and other conventions in Michigan;

iii. In 2020, NTA was scheduled to have an annual convention or similar event in Michigan, but the COVID-19 pandemic caused or contributed to NTA canceling this event;

iv. It has two Michigan chapters;

v. It regularly provides resources, literature, and other materials to its two Michigan chapters and Michigan residents about trapping;

vi. It lobbies for and otherwise seeks to influence trapping rights and laws in Michigan;

vii. Six times a year it sends its magazine, American Trapper, to Michigan residents. It also accepts payment for advertisements or classified ads in this magazine, including from Michigan residents;

viii. From 2017 through the end of 2021, Defendant NTA elected to conduct all of its scheduling, organizing, and advertising of its conventions and other events through Michigan.

ix. It conducts raffles open to Michigan residents who are members of the NTA. In this regard, NTA posted on its website that at least three people from Michigan won items in its 2021 raffle.[1] There are also dozens of Michigan winners of NTA's "Cash Calendar" every month.

x. It collects dues on an annual or longer basis from many Michigan residents, including from Plaintiff. There are Michigan affiliate dues and NTA provides liability insurance for its Michigan affiliates.

---

[1] See https://www.nationaltrappers.com/sweepstakes.html (visited on 1/14/2021), which identified J. Skeans, D. Adams, and S. Qualls.

B. Around October 7, 2021, NTA sent its agents or employees to Plaintiff's Michigan residence to pick up Plaintiff's work product and other materials, to have Plaintiff sign employment related documents, and to hand-deliver Plaintiff's payroll check;

C. NTA, by its agents, officers, or employees, made false and defamatory statements, which were directed towards Plaintiff here in Michigan. Plaintiff is suing for the harm and damages caused by these statements.

D. NTA's officers, agents, or employees also wrongfully retaliated against Plaintiff for reporting sexual harassment of a co-worker. Such retaliation was also directed to Plaintiff here in Michigan and Plaintiff is suing for damages caused by such retaliation.

10.     Thus, Defendant NTA's acts and conduct fall within Michigan's long-arm statute MCL 600.705, including subparagraphs (1) which concerns the transaction of business within Michigan and (2), which concerns the doing or causing an act to be done or consequences to occur leading to an action for tort. And the exercise of jurisdiction also comports with due process.

11.     At all relevant times, Plaintiff was employed under a written contract with Defendant NTA and Plaintiff worked out of Osceola County in performing under her contract with NTA.

12.     Defendant John Daniel is an individual. While it is believed Mr. Daniel is not a resident of Michigan, he has, upon information and belief, traveled to Michigan in a personal and professional capacity many times. He has also conducted business on behalf of NTA in Michigan. Further, Mr. Daniel has acted to tortiously harm Plaintiff and those actions were directed towards Plaintiff and her Michigan residence. As explained below, such actions led to harming Plaintiff and causing her to suffer damages in Michigan.

13.     Defendant Matt Lumley is an individual. While it is believed Mr. Lumley is not a resident of Michigan, he has, upon information and belief, traveled to Michigan in a personal and professional capacity. He has also conducted business on behalf of NTA in Michigan. Further, Mr. Lumley has acted to tortiously harm Plaintiff and those actions were directed towards Plaintiff and her Michigan residence. As explained below, such actions led to harming Plaintiff and causing her to suffer damages in Michigan.

14.     All or many acts that led to the causes of action involved with the Complaint occurred in Osceola, Michigan.

15.     The amount in controversy is greater than $25,000.00, exclusive of costs and interest.

16.     Subject matter jurisdiction over this matter arises under MCL § 600.601 *et seq*.

17.     Thus, the Court has personal and subject matter jurisdiction, and venue is proper in this Court under MCL § 600.1621.

## STATEMENT OF FACTS GIVING RISE TO THE CLAIMS

18.     Plaintiff incorporates by reference and realleges the preceding allegations.

19.     Plaintiff was first hired by Defendant NTA in 2017 to work as its events coordinator. At that time, she was a Michigan resident.

20.     Plaintiff remained a Michigan resident from the beginning of her employment with NTA in 2017 through the termination of that employment in 2021.

21.     Defendant NTA controlled and affected the terms, conditions, and privileges of Plaintiff's employment during all relevant times Plaintiff worked for NTA. Further, because NTA controlled, approved, and oversees all local or state chapters throughout the U.S., it also controls and affects Plaintiff's employment opportunities with those chapters.

22.     Around December 30, 2020, Defendant NTA renewed its employment of Plaintiff as its events coordinator. The term of this renewal was from January 1, 2021, through December 31, 2021, with provisions for renewing it.

23.     As Defendants Convention Coordinator, Plaintiff diligently performed her job duties and often excelled in the performance of her job duties.

24.     For example, Plaintiff was routinely recognized and praised for her job performance.

25.     Most recently, around July 19, 2021, Plaintiff was recognized by Defendant NTA for her exceptional job performance in organizing Defendant NTA's national convention that took place in July 2021.

26.     On or around July 24, 2021, Defendant NTA's Vice President, Matt Lumley, made least two late night phone calls to a young, female who was employed at NTA's Indiana office. This employee is also married and is a mother to two children.

27.     Upon information and belief, Mr. Lumley made these calls beginning around 1:30 AM.

28.     The day after Mr. Lumley made these calls to NTA's female employee, that female employee disclosed to several witnesses the sexually graphic nature of these phone calls.

29.     Further, the day after the harassing phone calls were made, other witnesses saw this female employee visibly distraught.

30.     Plaintiff learned from these preceding witnesses about the calls described above, including their graphic, lewd and obscene nature.

31.     Around July 25, 2021, Plaintiff reported the preceding incident involving Mr. Lumley to Defendant NTA's President, John Daniel. In sum, Plaintiff told Mr. Daniel that, Matt Lumley called NTA's female employee two times around 1:30 AM. She also explained that the female

employee's co-workers were also distressed about the incident. Plaintiff emphasized, " I don't want to see a sexual harassment suit brought against NTA by an employee, so you might want to talk to Matt and tell him to knock it off."

32.     Upon information and belief, Defendant Daniel hand-picked Lumley to be the NTA's Vice President. Also upon information and belief, Defendants Daniel and Lumley are good friends.

33.     Defendant Daniel sought to protect Lumley from the consequences of his sexual harassment of NTA's employee. Thus, upon information and belief, Daniel intervened in NTA's investigation to discredit Plaintiff and to interfere with the investigation so that his friend Lumley would not be held accountable for his sexual harassing actions described above.

34.     Upon information and belief, Defendant NTA chose not to investigate Plaintiff's report of sexual harassment. Alternatively and upon information and belief, Defendant failed to properly investigate Plaintiff's report of sexual harassment.

35.     Upon information and belief, Defendant NTA's response to Plaintiff's report of sexual harassment was intended to protect and shield it and Mr. Lumley from the consequences of his sexual harassment.

36.     After Plaintiff reported the preceding sexual harassment to Mr. Daniel, she was defamed, disparaged, retaliated against, and eventually terminated by Defendants.

37.     Plaintiff was terminated because she reported the sexual harassment by Mr. Lumley of NTA's employee.

38.     Upon information and belief, had she not reported Mr. Lumley's sexual harassment, Defendant NTA would have continued its employment of Plaintiff as it did since 2017.

39.     Defendant NTA also mishandled Plaintiff's termination. Specifically, around August 16, 2021, Defendant NTA inadvertently gave Plaintiff to review content to be published in

Defendant NTA's magazine. This written content included a full-page job posting for Plaintiff's position. Yet at the time, Defendant had not notified Plaintiff of her termination from this position.

40.    Defendant, upon realizing its mistake, scrambled to provide Plaintiff written notification that her position was terminated, which happened on August 20, 2021.

41.    In sum and as fully discussed below, Defendant NTA terminated Ms. Wright in retaliation for her reporting NTA's Vice President's sexually harassing early morning calls to NTA's female employee.

42.    Exacerbating this wrongful conduct, Defendant NTA, through its President, Vice President, or other agents or officers, made various false, defamatory, and other disparaging statements about Plaintiff. Such statements focused on her job performance and accusations about her promiscuity and improper relationships with a married man during contract with NTA.

43.    Upon information and belief, Defendant NTA and the individual Defendants' actions were intended to convey the message to its employees that sexual harassment in the workplace would be tolerated, especially for those men connected with Defendant Daniel's network. And if NTA employees dared to speak out against members of this organization, then they would be targeted for retaliation like that suffered by Plaintiff.

## COUNT I AGAINST DEFENDANTS JOHN DANIEL AND MATT LUMLEY: DEFAMATION (SLANDER)

44.    Plaintiff incorporates by reference and realleges all the preceding allegations as though fully set forth here.

45.    Before Plaintiff reported the above referenced sexual harassment, Plaintiff met or exceeded the requirements under her contract and for her position. Thus, Defendant NTA had no reason and given any notice it would not renew Plaintiff's agreement with NTA.

46.     Yet within days or weeks of Plaintiff reporting the above referenced sexual harassment, Defendant NTA decided to terminate its agreement with Plaintiff.

47.     Upon information and belief, Defendant NTA's decision to terminate Plaintiff's contract was solely or in part because of false and defamatory statements made by Defendants Daniel and Lumley. These statements were made to NTA's Executive Council. It is also believed Defendants Daniel and Lumley also made false and defamatory statements to other agents or employees of NTA.

48.     These false and defamatory statements made by Defendants Daniel and Lumley were made beginning around July 20, 2021, and through mid-August 2021. These statements were materially false and made to Defendant NTA's Executive Council. These statements included:

   A.  Plaintiff was incompetent and otherwise failed to perform her job duties.

   B.  Plaintiff wrongfully denied Mr. Lumley, his colleagues, and NTA volunteers' access to the grounds where NTA's convention was being held, including wrongfully withholding keys to onsite buildings that NTA had contracted to use in July 2021.

   C.  Plaintiff's incompetence and mismanagement over planning Defendant NTA's July national convention caused the company hosting the convention to threaten to cancel Defendant NTA's contract.

   D.  Plaintiff's incompetence and mismanagement over planning Defendant NTA's July national convention also caused the company hosting the convention to threaten to prohibit Defendant NTA from using its site in the future.

   E.  Additionally, Mr. Lumley, Mr. Daniel, or both also made false defamatory statements that Plaintiff was having an intimate relationship with a married man

during her contract with NTA, including during Defendant NTA's July 2020 national convention and thus Plaintiff's contract should be terminated.

F.  Defendant Daniel also reported to the Executive Counsel that Plaintiff refused to give a shaded campsite with electric hook-up to the President of the Florida Trappers association whose wife was ill and needed a CPAP machine at night. This too is not true.

49.      Based on these false and defamatory statements, Defendant Daniel asked Defendant NTA's Executive Counsel to terminate its contract with Plaintiff, which it did. Yet Plaintiff's contract would not have expired until January 22. Further, the Convention Coordinator contract had been previously renewed year-after-year until the Coordinator resigns. Thus, because of, in whole or part,   Defendants' defamation of Plaintiff, her contract was not renewed. Thus, Defendants' statements caused or contributed to Plaintiff suffering economic damages to her in the form of lost wages, benefits, promotions, reputational harm; and other damages to be proven at trial.

50.      Plaintiff was a private person when Defendants made their false and defamatory statements about her.

51.      These statements by Defendants Lumley and Daniel were materially false and damaged Plaintiff's reputation and deter people from dealing with Plaintiff.

52.      Defendants' statements wrongfully and maliciously imputed criminal, dishonest, fraudulent, or other improper behavior to Plaintiff.

53.      Defendant's statements tended to harm and did harm Plaintiff both personally and professionally, as well as to interfere with her contract with NTA, prejudice her in relation to her colleagues, professional connections, and members at the NTA.

54.     Defendants made the statements to third parties and their publication was unprivileged.

55.     Defendants made their defamatory statements with fault amounting at least to negligence.

56.     Defendants' statements are actionable irrespective of special harm (defamation per se) or because of the existence of special harm caused by publication.

57.     Defendant Daniel and Lumley's statements about Plaintiff being unchaste or imputing misconduct or deficient performance by Plaintiff described above and their statements damaged Plaintiff's business and financial opportunities are defamatory per se and, so damages are presumed. See MCL 600.2911(1) (words imputing that the plaintiff is unchaste or committed a crime); *Lawrence; Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 497 NW2d 585 (1993); *Swenson-Davis v Martel*, 135 Mich App 632, 354 NW2d 288 (1984).

58.     Defendants were at least negligent in making the preceding false and defamatory written and verbal statements about Plaintiff.

59.     Upon information and belief Defendants have made or caused to be published additional false and defamatory statements about Plaintiff. These statements are also false, defamatory, and highly injurious to her reputation and employment interests.

60.     Plaintiff wrote to Defendants Lumley and Daniel around October 29, 2021, asking for a retraction and to take other action to correct his wrongful conduct. Yet no statements have been retracted by any Defendants.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has lost her job, humiliation, stress, substantial economic injury, loss of respect from her former

colleagues, goodwill, harm to her reputation, loss of esteem and standing in the community, and loss of business opportunities.

WHEREFORE, Plaintiff request that this Honorable Court grant Judgment in her favor and against Defendants John Daniel and Matt Lumley in an amount to be determined at trial and to include:

A. All damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

B. Order Defendant and anyone acting in concert with Defendant John Daniel or Matt Lumley to publish a retraction to NTA's Executive Council, officers, agents, members, and any other individuals or businesses that were told or were told about the above referenced defamatory communications and just as the defamatory statements were published as well as posting such retraction in the magazines or newspapers or other periodicals Defendant NTA publishes or has advertised in during the last three years.

## COUNT II AGAINST DEFENDANTS JOHN DANIEL AND MATT LUMLEY: DEFAMATION (LIBEL)

62.     Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

63.     As discussed above, Defendant John Daniel made false and defamatory statements about Plaintiff to NTA and its Executive Council, officers, agents, members, and others. See the above assertions, including those found in Count I.

64.     Upon information and belief, Defendants Daniel and Lumley published all or some statements identified in the preceding count.

65.     Plaintiff was a private person when Defendants published their false and defamatory statements about her.

66.     The publications by Defendants Lumley and Daniel were materially false and damaged Plaintiff's reputation and deter people from dealing with Plaintiff.

67.     Defendants' publication wrongfully and maliciously imputed criminal, dishonest, fraudulent, or other improper behavior to Plaintiff.

68.     Defendant's publication tended to harm and did harm Plaintiff both personally and professionally, as well as to interfere with her contract with NTA, prejudice her in relation to her professional connections, and other members at the NTA.

69.     Defendants made their publication to third parties and their publication was unprivileged.

70.     Defendants made their defamatory publication with fault amounting at least to negligence.

71.     Defendants' publication of their statements are actionable irrespective of special harm (defamation per se) or because of the existence of special harm caused by publication.

72.     Defendants Daniel and Lumley were at least negligent in publishing the unprivileged, false statements to NTA and its employees, agents, or other others.

73.     Plaintiff has been damaged by Defendants' wrongful publications.

WHEREFORE, Plaintiff request that this Honorable Court grant Judgment in her favor and against Defendants John Daniel and Matt Lumley in an amount to be determined at trial and to include:

A.  All damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

B.  Order Defendant and anyone acting in concert with Defendant John Daniel or Matt Lumley to publish a retraction to NTA's Executive Council, officers, agents, members, and any other individuals or businesses that were told or were told about the above referenced defamatory communications and just as the defamatory statements were published as well as posting such retraction in the magazines or newspapers or other periodicals Defendant NTA publishes or has advertised in during the last three years.

## COUNT III AGAINST DEFENDANTS JOHN DANIEL, MATT LUMLEY: TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCIES

74.      Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

75.      Plaintiff had a contractual relationship with Defendant NTA, which began in 2017 and was renewed in 2018, 2019, 2020 and 2021.

76.      Plaintiff's contract with NTA would have been reviewed for 2022, but for the tortious interference and actions of Defendants Daniel and Lumley.

77.     Specifically, Plaintiff's contract was not renewed because of the false and defamatory statements made by Defendants Daniel and Lumley, which were described above. See Counts I and II. Those statements were made in or around July 29, 2020, and made to Defendant NTA's Executive Council.

78.     Further, Plaintiff's contract with NTA was not renewed because Defendants unlawfully and wrongfully retaliated against Plaintiff in violation of federal and Michigan statutory law and Michigan's common law.

79.     Defendants, intentionally, unlawfully, and improperly interfered with Plaintiff's business expectancies and contractual relationships by making false statements about her to NTA's Executive Committee.

80.     When Defendants made these false statements to Plaintiff's employer, Defendants knew Plaintiff had a contractual relationship with NTA, which was expected to continue, but for Defendants' actions described above.

81.     Defendants' intent in making such false statements and publications was to damage Plaintiff and her contractual relationship and her continued business expectancies with NTA.

82.     Defendants' intentional interference with Plaintiff's contractual relationships and business expectancies proximately caused Plaintiff harm and damage.

83.     Because of Defendants' unlawful and improper conduct, Plaintiff has suffered and will continue to suffer damages as described in the Complaint.

WHEREFORE, Plaintiff Ms. Vickie Wright ask the Court to enter a judgment in her favor and against Defendants Lumley and Daniel  all damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other

compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

### Count IV Against Defendants Lumley and Daniel: Common Law Invasion of Privacy - False Light Publicity

84.     Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

85.     Michigan has long recognized the common-law tort of invasion of privacy. *Lewis v. LeGrow*, 258 Mich. App. 175, 193, 670 N.W.2d 675, 687 (2003).

86.     Among the rights protected by Michigan's common-law right of privacy and relevant to this Complaint are the protections against the invasion of privacy based on an (i) intrusion upon the plaintiff's seclusion or solitude, or into her private affairs ... and (iii) publicity which places the plaintiff in a false light in the public eye; See *Tobin v. Mich. Civil Serv. Com.*, 416 Mich. 661, 672, 331 N.W.2d 184, 189 (1982); citing Prosser, Privacy, 48 Cal L Rev 383, 389 (1960).

87.     Plaintiff's claims against Defendants are limited to publicity that placed Plaintiff in a false light in the public eye, and appropriation of Plaintiff's name or likeness, intrusion upon Plaintiff's seclusion or solitude.

88.     Defendants are liable to Plaintiff for invasion of privacy for their publicity that placed Plaintiff in a false light in the public eye.

89.     Defendants made a disclosure to the public or to a large number of people.

90.     This disclosure stems from Defendants' Daniel and Lumley's statements and disclosure around July 24, 2021, to NTA's Executive Committee and, upon information and belief, others about her promiscuity and a purported relationship with a married man while performing her job duties for NTA.

91.     The information disclosed by Defendants was highly objectionable to any reasonable person. This is because Defendants' disclosure attributed to Plaintiff characteristics, conduct, or beliefs that were false and placed Plaintiff in a false light, including the following: (i) Plaintiff was promiscuous; (ii) She had an affair with a married man; and (iii) Plaintiff engaged in poor performance of her job duties, insubordination, and other misconduct relative to her job with NTA.

92.     Upon information and belief, Defendants Lumley and Daniel knew or had reason to know Plaintiff did not engage in any of the preceding conduct that placed Plaintiff in a light that would be highly offensive to a reasonable person and was so for Plaintiff.

93.     Also, Defendants' statements attributed to Plaintiff characteristics, conduct, or beliefs that were false and placed Plaintiff in a false light in relation to her employment with NTA and NTA's Executive Committee and its other agents or employees.

94.     All Defendants knew or acted in reckless disregard as to the falsity of the disclosed information and the false light in which Plaintiff would be placed.

WHEREFOR, Plaintiff asks this Court to enter judgment in her favor and against Defendants for an award of all damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

## COUNT VII AGAINST ALL DEFENDANTS:
### CIVIL CONSPIRACY

95.     Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

96.     A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Admiral Ins Co v Columbia Casualty Ins Co*, 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992); A civil conspiracy may also be shown by proof that the defendants acted in concert to accomplish some underlying tortious act. See, e.g., *Urbain v Beierling*, 301 Mich App 114, 131-132; 835 NW2d 455 (2013).

97.     Defendants Lumley, Daniel, and NTA engaged in a civil conspiracy against Plaintiff.

98.     These Defendants engaged in a concerted action to harm Plaintiff in her personal and professional reputation and her credibility.

99.     Defendants accomplished this harm by defaming her, tortiously interfering with Plaintiff's employment and contractual relationship, retaliating against her for reporting sexual harassment, imputing false conduct or statements, and stating she had engaged in an affair with a married man, which is conduct criminalized under Michigan law.

100.    These Defendants' actions were designed, intended to, and did accomplish a criminal and an unlawful purpose through criminal, unlawful, or tortious means.

101.    These Defendants' actions were designed, intended to, and did accomplish a criminal and an unlawful purpose through criminal and unlawful means.

WHEREFOR, Plaintiff asks this Court to enter judgment in her favor and against Defendants for an award of all damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be

considered appropriate.

## COUNT VI AGAINST ALL DEFENDANTS:
## UNLAWFUL RETALIATION IN VIOLATION OF MICHIGAN CRA, § 37.2701

**102.** Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

**103.** Defendant NTA contracted with Plaintiff from 2017 through the end of 2021. Under this contract, it employed Plaintiff as NTA's event coordinator.

**104.** Defendant NTA controlled and affected the terms, conditions, and privileges of Plaintiff's employment relationship during all relevant times Plaintiff worked for NTA.

**105.** Further, because NTA controlled, approved, and oversees all local or state chapters throughout the U.S., it also controls and affects Plaintiff's business opportunities and employment opportunities with those chapters.

**106.** Bedrock Michigan law under its Civil Rights Act, recognizes that in employment, freedom from discrimination because of sex is a civil right. MCL 37.2102; MSA 3.548(102).

**107.** Under MCL 37.2701 and relevant to this Complaint:

"[t]wo or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

(b) Aid, abet, incite, compel, or coerce a person to engage in a violation of this act.

(c) Attempt directly or indirectly to commit an act prohibited by this act.

\* \* \*

(e) Willfully obstruct or prevent a person from complying with this act or an order issued or rule promulgated under this act.

(f) Coerce, intimidate, threaten, or interfere with a person in the exercise or

enjoyment of, or on account of his or her having aided or encouraged any
other person in the exercise or enjoyment of, any right granted or protected
by this act

108.    Additionally, Defendants and Plaintiff are "persons," under the preceding Act.

109.    Plaintiff engaged in a protected activity when she reported Defendant Lumley's
sexual harassment of NTA's employee that is described above, to Defendant Daniel. She made
this report around July 24, 2020.

110.    Defendant Daniel was NTA's President when Plaintiff reported the sexual
harassment by Defendant Lumley.

111.    Upon information and belief, Defendant Daniel communicated the sexual
harassment report to NTA's General Counsel and attorney, Gary Leistico within days of Plaintiff's
report. Thus, Defendant NTA knew about Plaintiff's report of sexual harassment.

112.    Upon information and belief, Defendants Lumley and Daniel sought to directly or
indirectly limit the investigation into Plaintiff's report.

113.    Within days of Plaintiff's reporting the sexual harassment Defendants Lumley and
Daniel presented false and defamatory information about Plaintiff and otherwise bad-mouthed
Plaintiff to NTA's Executive Committee. Defendants took these actions to have Plaintiff
terminated. In doing so, Defendants Lumley and Daniel:

    **A.** Retaliated against Plaintiff because she reported on, assisted, or participated in an
investigation of sexual harassment;

    **B.** Aided, abetted, incited, and compelled NTA to retaliate against Plaintiff by
presented false and defamatory information otherwise bad-mouthing Plaintiff to
NTA's Executive Committee to have Plaintiff terminated.

    **C.** Attempted directly and indirectly to commit an act prohibited by Michigan's Civil
Right's Act.

**D.** Willfully obstructed or prevented a person from complying with Michigan's Civil Right's Act, including Plaintiff.

**E.** Coerced, intimidated, interfered with and threatened Plaintiff and others in the exercise or enjoyment of her employment or because of her having aided or encouraged others to act as protected by Michigan's Civil Rights Act.

114.     Defendant NTA took adverse action against Plaintiff's contract when it decided to terminate Plaintiff. This decision was made within just days or weeks of Plaintiff reporting on Defendant Lumley's sexual harassment. In this regard, NTA had prepared a full-page job posting for Plaintiff's position by August 16, 2020. And Defendant NTA provided written notice it terminated Plaintiff on August 20, 2020.

115.     Also, Plaintiff's termination happened mere weeks after Plaintiff was recognized for her outstanding service to NTA. Thus, at the time of Plaintiff's termination, she was meeting or exceeding reasonable expectations in her job duties and had not been disciplined or otherwise reprimanded.

116.     There was a causal connection between Plaintiff's protected activity of reporting sexual harassment by Defendant Lumley and the termination of her employment by NTA.

WHEREFOR, Plaintiff asks this Court to enter judgment in her favor and against Defendants for an award of all damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

## COUNT VII AGAINST DEFENDANT NTA, LUMLEY, AND DANIEL: <br> TERMINATION IN VIOLATION OF PUBLIC POLICY

**117.**     Plaintiff Ms. Wright incorporates by reference and realleges the preceding allegations as though fully set forth here.

**118.**     Under Michigan law, some reasons for terminating employment are so contrary to public policy as to be actionable.

**119.**     Plaintiff engaged in protected activity when she reported to Defendant Daniel about Defendant Lumley's sexual harassment.

**120.**     Upon information and belief, Defendant NTA failed to investigate Plaintiff's report properly and meaningfully.

**121.**     Defendant NTA failed to enforce its policies and procedures prohibiting retaliation for reporting on sexual harassment.

**122.**     Defendant NTA failed to train its employees or agents about workplace sexual harassment practices and anti-retaliation protections for reporting sexual harassment.

**123.**     Defendant NTA failed to protect people like Plaintiff from unlawful retaliation for reporting sexual harassment.

**124.**     Because Plaintiff sought to have a workplace free of unlawful sexual harassment, compliance with applicable laws prohibiting unlawful sexual harassment, and compliance with anti-retaliation prohibitions for reporting on sexual harassment, Defendants took adverse action against her, including, but not limited to,:

     **A.** Making false and defamatory statements about Plaintiff;

     **B.** Discouraging NTA members and its agents from associating with Plaintiff;

     **C.** Disciplining Plaintiff;

     **D.** Humiliating Plaintiff;

E. Compelling Plaintiff to edit the job posting to replace her;

F. Treating Plaintiff differently compared to employees who did not engage in protective activity;

G. Wrongfully nonrenewing her contract;

H. Terminating Plaintiff's employment;

125.    Thus, Defendants NTA, Lumley, and Daniel wrongfully retaliated and terminated Plaintiff in violation of Michigan public policy.

WHEREFOR, Plaintiff asks this Court to enter judgment in her favor and against Defendants for an award of all damages the Court or jury determines is fair, appropriate, and just compensation for the injuries and damages suffered by Plaintiff for her actual, consequential, and incidental losses, including lost wages, benefits, bonuses, and other compensation sustained because of Defendants' wrongful actions described in the Complaint, exemplary damages as applicable, together with interest, costs, and attorney fees, along with any other relief that may be considered appropriate.

Respectfully submitted,

**Shinn Legal, PLC**

By:     /s/Jason M. Shinn          Dated: June 20, 2022
        Attorney for Plaintiff
        Vickie Wright

STATE OF MICHIGAN
IN THE 49th CIRCUIT COURT FOR OSCEOLA COUNTY

VICKIE WRIGHT
    Plaintiff

-v-

NATIONAL TRAPPERS ASSOCIATION,

John Daniel, and

Matt Lumley

    Defendants

Case No. 22-16395-CZ

Hon. Scott Hill-Kennedy

---

Shinn Legal, PLC
Jason M. Shinn (P64453)
Attorney for Plaintiff
3080 Orchard Lake Rd., Suite C
Keego Harbor, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

---

**PLAINTIFF'S JURY DEMAND**

    Plaintiff Vickie Wright demands a jury trial on all legal claims and prospective defenses,

**except for** all claims based on equity or that intrinsically involve issues of law for the trial judge

to decide and are thus properly triable only by the judge assigned to this case.

                    Respectfully submitted,

                    **Shinn Legal, PLC**

By:    */s/Jason M. Shinn*      Dated: June 20, 2022
       Attorney for Plaintiff
       Vickie Wright

4876-2432-7462, v. 1